STEVEN F. GRUEL (SBN 213148)
315 Montgomery Street, 10th Floor
San Francisco, California 94104
Telephone Number (415) 533-6973
attystevengruel@sbcglobal.net
www.gruellaw.com

Attorney for Defendant KEN HONG WONG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO VENUE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>KEN HONG WONG,<br><br>    Defendant. | No. CR-23-0162-WHO<br><br>DEFENDANT KEN HONG WONG'S SENTENCING MEMORANDUM -and- SUPPORTING DECLARATION OF STEVEN F. GRUEL<br><br>Honorable William H. Orrick III<br><br>Date: November 30, 2023<br>Time: 1:30 pm |

KEN HONG WONG, by and through his counsel, Steven F. Gruel, hereby submits DEFENDANT KEN HONG WONG'S SENTENCING MEMORANDUM and SUPPORTING DECLARATION OF STEVEN F. GRUEL.

**KEN HONG WONG'S SENTENCING MEMORANDUM**

### I.   INTRODUCTION

Mohammed Nuru's corruption at the San Francisco Department of Public Works (DPW)

1

was lengthy and widespread. The FBI's investigation netted at least 17 defendants with varying degrees of criminal involvement with Nuru.[1] The investigation revealed that Nuru operated a "pay to play" scheme awarding contracts, permits and official favors to many others in exchange for money, dinners, gifts, and trips.

For decades Ken Wong has been extremely active in San Francisco community service and a participant in numerous charitable events. As a California State Parole Officer in San Francisco and his passionate community service, Ken Wong knew and associated with many notable members of the San Franciso political landscape. Ken Wong received recognitions for his volunteer contributions to the community from a long list that stretched from Mayors Willie Brown, Gavin Newsom and Edwin Lee to former District Attorney Kamala Harris, State Treasurer Fiona Ma and many members of the San Francisco Board of Supervisors. As a Parole Officer helping those released from prison back into the community and into the work force, he also met Mohmand Nuru who was in charge of the San Francisco Public Works Department (PWD).

In 2019, a friend of Ken Wong approached him and asked if he would assist finding a job as an engineer at PWD for a third person (the friend's friend). When Ken Wong later asked Nuru about this employment request, the latter demanded $20,000 to give the third person a job at PWD. When the others agreed to this price, Ken Wong served as the "bagman" bringing the

---

[1] Footnote 1 of the Government's November 2, 2023 Sentencing Memorandum in *U.S. v. Hernandez*, Cr-20-00353-WHO listed the following cases as related to the "large-scale federal investigation as <u>United States v. Mohammed Nuru</u>, 21-CR-0490 WHO; United States v. *Walter Wong*, 20-CR-0257 WHO; United States v. *Harlan Kelly*, 21-CR-0402 RS; United States v. *Nick Bovis*, 20-CR0204 WHO; United States v. Balmore Hernandez, 20-CR-0353 WHO; United States v. Alan Varela, 21-CR-0192 WHO; United States v. *William Gilmartin*, 21-CR-0192 WHO; United States v. *Florence Kong*, 20-CR-0354 WHO; United States v. *Sandra Zuniga*, 21-CR-0096 WHO. United States v. *Recology Inc*. 21-CR-0356 WHO, United States v. *Paul Giusti*, 21-CR-0294 WHO; United States v. *John Porter*, 22-CR-0270 WHO; United States v. *Zhang Li*, 23-CR-0220 WHO; United States v. *Z&L Properties*, 23-CR-0221-WHO.

cash to Nuru who hired the third party. The third party's father (back in China) then paid $10,000 to Ken Wong. Interestingly enough, the third party only worked a few weeks at PDW and Ken Wong never met her or her father in China.

When first approached by the FBI on October 21, 2020, Ken Wong immediately admitted his role in passing the bribe money to Nuru. Ken Wong also immediately began cooperating with the FBI on this and other matters. This cooperation continued up to and including 2023. When Ken Wong's crime with Nuru is compared to the many other long-running and extensive bribery schemes others had with Nuru, Ken's actions are undoubtedly at the bottom of the Nuru crime scale. Ken Wong does not excuse his actions, but rather respectfully requests that the Court take into account his low position on the Nuru bribery scale in considering a fair sentence.

Moreover, the law requires that the Court consider the "full measure" of Ken Wong in fashioning a fair and just sentence. This "measurement," of course, is not an exact science and naturally involves the input of several others. For example, the United States Probation Department and the United States Attorney's Office each must present their recommended sentences for Ken Wong given this offense.

Here, the Probation Officer correctly concludes that a downward variance is warranted in Mr. Wong's sentencing determination. Additionally, the United States Attorney supports a lower than advisory guideline sentence in that it will make its § 5K1.1 downward departure motion predicated on Mr. Wong's substantial assistance. When combined, the Probation Department's guideline variance together with the government's downward departure should move the Court in the direction of a noncustodial sentence. Additional facts and arguments presented herein should land the Court on a sentence of probation with a fine. Mindful that fundamental fairness

is the guiding principle in fashioning a sentence which is "sufficient but not greater than" necessary to achieve the goals of sentencing, Mr. Wong respectfully submits that the application of the 18 U.S.C. § 3553(a) factors should convince the Court that the fair sentence to be imposed should be: **3 years of probation with a condition of 3 months of home confinement with electronic monitoring and a fine of $10,000 to be paid over the term of probation.** As developed in Mr. Wong's Memorandum, the following points summarize just some of the salient facts for the recommended sentence of probation and a $10,000 fine:

1. While the Probation Officers correctly concludes that a variance is appropriate, a greater downward variance is warranted given the totality of the 18 U.S.C. § 3553(a). statutory factors such as:

    (a) Mr. Wong had a recognized and distinguished career as a California Parole Officer from 1990 to 2015 where he helped countless individuals assimilate back into the community upon release from state incarceration (Gruel Exhibits E & F);

    (b) Mr. Wong served on several Task Forces assisting the FBI in combating Asian Organized Crime. His work has received recognition from former FBI Director Louis Freeh in 1998 as well as the recent letter of support from Kingman Wong, a retired FBI Agent who not only excelled as a San Francisco FBI agent, but he rose to become the Special Agent in Charge (SAC) of the New York Office as well as serving at the FBI Main Headquarters in Washington D.C. (A copy of Kingman Wong's letter is submitted herewith attached to the Declaration of Steven F. Gruel, Exhibit B);

    (c) Mr. Wong has earned numerous Medals of Valor, Award of Distinction and Congressional Recognition from Congresswoman Nancy Pelosi and former San Francisco Police Chief Fred Lau; as well as an honored spot on the National American Police Hall of Fame in 2001 in recognition of his work regarding the " . . . apprehension and arrest of a criminal whose acts were a danger to the public welfare . . ." (Gruel Exhibits E, H);

    (d) For years, Mr. Wong has been deeply involved in community service resulting in Certificates of Recognition and Appreciation from such former San Francisco Mayors Willie Brown, Gavin Newsom and Edwin Lee, the former Oakland Police Chief, California State Treasurer Fiona Ma and former San Francisco District Attorney Kamala Harris, numerous members of the San Francisco Board

      of Supervisors, former Assemblyman Mark Leno, Congresswoman Jackie Speer and former Millbrae Mayor Wayne Lee (Gruel Exhibits D, G, I); and

  (e) For several years Mr. Wong has voluntarily participated as a singer and performer for an organization raising money for the Children's Hospital Cancer Center. These concerts raising money for the Children's Cancer have taken place in Seattle; in San Francisco for the UCSF Children's Hospital Cancer Center; in Vancouver and Calgary for the Children's Hospitals, as well as events in 2024 scheduled for San Jose, Fremont, Alameda and South San Francisco (Gruel Exhibit C);

2. Ken Wong was first approached by the FBI about this case on October 21, 2020. He immediately began to truthfully cooperate with the FBI and the United States Attorney's Office. His substantial assistance earned the government's § 5K1.1 downward departure motion. However, from previous discussions with the federal prosecutor, it is anticipated that the government will nonetheless recommend a period of incarceration. Mr. Wong respectfully requests a greater downward departure than likely suggested by the prosecution given that for 3 years he has met with the FBI case agents approximately 70 occasions and provided law enforcement valuable information. These sensitive matters will be filed under seal for the Court's consideration.

3. The nature of Ken Wong's criminal conduct supports a noncustodial sentence. Ken Wong acted a "conduit" for a third party to give Nuru a bribe to obtain a job at the PWD. The individual who approached Ken Wong to bribe Nuru and the individual who actually got the job at PWD were never arrested, much less charged for their roles in this short-lived bribery scheme.

4. A sentence of 3 years of probation and a $10,000 fine avoids sentencing disparity. In several other Nuru corruption cases, individuals with far greater criminal conduct than Ken Wong received sentences which actually support probation for Ken Wong. For example, regardless of a multi-million dollar bribe scheme, billionaire Zhang Li wasn't prosecuted at all; John Porter's role in Recology's scheme with Nuru resulted in $100 million of overcharges nonetheless received 6 months of home detention; and Balmore Hernandez received 6 months in prison.

5. Ken Wong takes full responsibility for his criminal conduct as outlined in the Plea Agreement. He will address the Court at sentencing but has also submitted his letter of apology to Your Honor, his family and his friends who he has disappointed with his criminal conduct (*see Gruel Declaration, Exhibit A*).

The above points collectively support a noncustodial sentence when added to the combination of the probation department's downward variance with the prosecutor's anticipated § 5K1.1 downward departure motion. We begin with the PSR and the advisory sentencing guidelines.

## II. **THE ADVISORY PRESENTENCE REPORT (PSR)**

A. The PSR's Advisory Guideline Calculation and Recommendation

Mr. Wong's draft and final presentence reports (PSR) were provided on October 27, 2023 and November 16, 2023, respectively.[2]  The defense does not disagree with the final offense level (the plea agreement has a different offense level but arrives at the guideline range with a 2-point variance for the November 2023 Zero-Point Offender Adjustment) or the criminal history calculation.  PSR at ¶ ¶ 26, 33.  The PSR final advisory guideline range is 18 months to 24 months.  PSR at ¶ 51.  The PSR recognized several statutory grounds warranting a variance in accordance with 18 U.S.C. § 3553(a). PSR at ¶ 75.

The PSR recommends concurrent sentences of 12 months and 1 day with a $10,000 fine. Anticipating that its recommended sentence may even go lower, the PSR notes that the plea agreement includes the government's §5K1.1 substantial assistance downward departure motion. PSR at ¶ 73.

---

[2]  Mr. Wong later faxed more financial information to the probation officer on Monday (11/13/2023) which was not included in the PSR. Specifically, the insurance premiums for the 3 properties were not included int the asset / liability section of the PSR.  Also, the faxed documents included that the 3 properties' have annual insurance premiums of: (1) $1,026; (2) $1,010 and (3) $600. Finally, the property taxes for each property was omitted from the final PSR. The faxed documents show that the 3 properties have the following property taxes: (1) $5,090; (2) $9,925 and (3) $15,060. The probation officer mentioned that this financial information would be included in the PSR before the November 30, 2023 sentencing hearing.

Notwithstanding no objections to the above guideline determination and recognition of variance factors, Mr. Wong respectfully submits that a non-prison sentence is appropriate here. On November 9, 2023, Mr. Wong's submitted the following written objections and additions to the probation officer's draft PSR:

> "Please see the requested additions for the Ken Wong PSR:
>
> Page 2; RELATED CASES:  There are many cases related to the "house of corruption" operated by Mohammed Nuru.  The defense requests that all of the criminal cases and dispositions related to NURU be listed. The defense submits that there were somewhere between 14 to 17 cases related to Nuru and his corruption. In particular, the cases of US v. Zhang Li, Cr-23-220-WHO and US v. John Porter, CR-22-270-WHO should be listed here because they involved two Nuru bribery schemes involving a Chinese National Billionaire (Zhang Li) and a Recology Executive (John Porter) Li was not convicted or sentenced but paid a $50,000 fine and Porter received a sentence of probation.
>
> Paragraph 3.  The defense requests that this paragraph include that this is a cooperation plea agreement and that a government downward departure motion for substantial assistance pursuant to section § 5K1.1 of the USSG is contemplated at sentencing.
>
> Paragraph 10: I believe that the plea agreement says that Ken Wong agrees that the government could prove the allegation of $10,000 in federal assistance.
>
> Paragraph 12:  The defense requests the additional language in this paragraph:  "In fact, Mr. Wong immediately and openly admitted his culpability in this isolated bribery offense when approached by the FBI and fully cooperated with law enforcement in this and other investigations."
>
> Paragraph 40:  The defense requests the additional language in the paragraph: "Numerous letters have been submitted by members of law enforcement and the community in support of Mr. Wong. These letters are attached to this report for the Court's consideration."
>
> Paragraph 70:   The defense requests that this paragraph be completely DELETED from the PSR because this case involves a 5K1,1 substantial assistance downward departure rendering the information contained in the paragraph irrelevant to Mr. Wong's sentencing.
>
> Paragraph 75:   The defense requests that the following language be added to the paragraph: "A variance is also warranted given Mr. Wong's isolated bribery event with Mr. Nuru when compared to the sentences, or lack thereof, for those with much more

egregious criminal conduct with Mr. Nuru. In particular, the cases of US v. Zhang Li, Cr-23-220-WHO and US v. John Porter, CR-22-270-WHO should be listed here because they involved two Nuru bribery schemes involving a Chinese National Billionaire (Zhang Li) and a Recology Executive (John Porter) Li was not convicted or sentenced but paid a $50,000 fine and Porter received a sentence of probation. In other words, the need to avoid disparity is a factor supporting a variance. Also, although Mr. Wong was merely the conduit between the individuals who paid to bribe Nuru to obtain employment at the PWD, only Mr. Wong was prosecuted. The others were never charged for their criminal conduct."

Although the defense has no objection to the probation officer's advisory guideline calculation, the above relevant objections and additions support the defense recommendation for a noncustodial sentence. The objections and requested additions assist in juxtaposing Ken Wong's offense and the appropriate sentence with those more serious sentenced Nuru schemers. The related Nuru cases of *US v. Zhang Li*, Cr-23-220-WHO and US v. *John Porter*, CR-22-270-WHO are highlighted because they involved two extensive Nuru bribery schemes with a Chinese National Billionaire (Zhang Li) and a Recology Executive (John Porter). Li was not convicted at all (he paid a mere $50,000 fine) and Porter received a sentence of 6 months home confinement and probation. The recent 6-month sentence for Balmore Hernandez (a year-long bribery scheme for large lucrative contracts in exchange for $100,000 cash, a $40,000 John Deere tractor, other gifts and favors) also supports a noncustodial sentence in Ken Wong's case.

### III. THE STATUTORY FACTORS AND GOALS OF SENTENCING

Title 18, USC § 3553(a) lists the factors to be considered so that the court imposes *a sentence sufficient, but not greater than necessary,* to comply with the statutory purposes of sentencing. (emphasis added). The Court, in determining the particular sentence to be imposed, shall, among other factors, consider the following factors relevant to this case: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for

the sentence imposed to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; (3) the need to avoid unwarranted sentence disparities among defendants with similar records and who have been found guilty of similar conduct.

### A.   KEN WONG'S PROFESSIONAL HISTORY & CHARACTERISTICS

Ken Wong lawfully immigrated to the United States. PSR at ¶ 37. He is dedicated to his family and his community. PSR at ¶ 38; 40. His sister died of cancer is 2014 leaving 2 small children who Ken spends time with every weekend. PSR at ¶ 38. Attached to the supporting declaration of Steven F. Gruel filed herewith are many exhibits establishing a greater understanding of Ken Wong's extensive community work, distinguished law enforcement career, and heart-felt letters of support that are merely referenced in the PSR. PSR at ¶ 40. The following points support a noncustodial sentence in Ken Wong's case:

#### 1.   Kingman K. Wong's Letter of Support

Kingman K. Wong had a distinguished career in law enforcement advancing to the highest levels at FBI Headquarters in Washington, D.C. He first served in San Francisco where he operated successful investigations and prosecutions of Asian Organized Crime in the Bay Area. He advanced to become the Special Agent in Charge in New York City, and was then assigned to the FBI Headquarter in Washington, D.C. At FBI Headquarters, his initial assignment as the Unit Chief for the Asian and African Criminal Enterprise Unit, overseeing the FBI's investigations against Asian and African organized crime groups throughout the United States. In his second assignment at Headquarters, he Section Chief for the International

Operations Division, overseeing all of the FBI's Legal Attache offices throughout the world. Kingman Wong has also been an instructor at the FBI Training Facility at Quantico, Virginia as well as working as a part-time professor at Georgetown University. He has taken the time to compose a letter for the Court's consideration. *See Gruel Declaration ¶ 5, Exhibit B (Kingman K. Wong's letter and FBI Award for Outstanding Assistance Presented by Director Louis J. Freeh).*

Kingman Wong knows and has worked with Ken Wong for years. He is aware of Ken's criminal conduct in this case and offers his letter for the Court's consideration:

*"I am writing to seek your kind consideration of the following information before the sentencing of retired California State Parole Agent Ken H. Wong. While Mr. Wong and I both have the same surname, we are not related in any way.*

*For nearly 25 years, I had served as a special agent of the Federal Bureau of Investigation (FBI), retiring in the Senior Executive Service (SES) rank in 2012. Between 1989 to 1998, I was assigned to the San Francisco Division of the FBI to investigate, and subsequently supervise, the investigation of domestic and international Asian organized criminal activities.*

*In the early1990s, the San Francisco Bay Area faced an explosive growth in Asian organized criminal activities, fueled in part by the pending reversion of Hong Kong under Chinese Communist rule in 1997. Turf battles between U.S. and Hong Kong-based organized criminal groups ensued, resulting in multiple shootings and deaths. The FBI, in partnership with other federal, state, and local law enforcement agencies, led the effort to address this crime wave. Mr. Wong, a parole agent at the time and known for his expertise on Asian criminal sub-cultures, generously volunteered his support in several FBI investigations.*

*Between 1992 to 1998, the FBI successfully dismantled a number of violent domestic and international Asian organized criminal groups, such as the Wo Hop To triad (a Chinese criminal secret society originated in Hong Kong) that engaged in murder, drug and firearms trafficking, prostitution, extortion, and other serious crimes; and the John That Luong criminal organization that robbed and tortured computer chips distributors, drug trafficking, as well as committing other serious and violent criminal offenses. The success of the FBI in repelling this crime wave contributed to safer communities around the U.S., and Mr. Wong's invaluable assistance to the FBI cannot be understated. For his repeated assistance, the then-FBI Director Louis J. Freeh recognized Mr. Wong in March 1998 for his "outstanding assistance to the FBI in connection with its investigative efforts."*

*When I first learned about Mr. Wong's criminal conduct in late-April 2023, I was both shocked and disheartened. While I certainly do not condone or excuse his serious lapse in judgement, I also cannot disregard his past contributions to the FBI and the law enforcement profession in protecting our communities.* ***My initial inclination was that Mr. Wong should pay for his crime by serving a prison sentence. However, after comprehensive thoughts, I believe his incarceration would yield the least benefit for our community****.*

*While Mr. Wong had indeed succumbed to the temptation of greed and knowingly violated the law, I am now convinced that he is remorseful for his corrupted actions based on his expression of apologies and regrets as well as his guilty plea and cooperation with the government. The lessons learned from this case make Mr. Wong an ideal speaker in schools and law enforcement training academies where he can share his painful experience of allowing personal greed and unethical temptations to severely cloud the judgement of a former distinguished parole agent, leading to the distortion of his moral compass, reputational damage, and potential penal consequences.* ***By allowing Mr. Wong to repay his debt to society through community service that aims to educate and warn others from venturing into the realm of corruption and criminal conduct, rehabilitation may be achieved while he contributes to a possible reduction in future moral and ethical lapses by our students and law enforcement professionals.***

*Despite Mr. Wong's inexcusable actions, I believe he is a remorseful human being who truly regrets the pain he has caused to many people, including his own family. Therefore, I believe he is worthy of an opportunity to redeem and rehabilitate himself by helping others in our community. I humbly offer the above-mentioned statements for Your Honor's consideration. Thank you for the opportunity of allowing me to convey my thoughts on this matter. I am confident that the Court will render a fair and just penalty for Mr. Wong."*

A copy of FBI Director Louis J. Freeh award to Ken Wong is filed with the above letter. Kingman Wong's words carry significance at this time of sentencing. He stands uniquely qualified not only as a distinguished special agent who served at the highest levels of the FBI, but as someone who appreciates the significant contributions by Ken Wong. While he knows that a fair punishment is warranted, Kingman Wong asks the Court to consider the full measure of and significant contributions by Ken Wong.

2.     **Ken Wong's Dedication to His Community and Charitable Causes**

Ken Wong has been and remains the epitome of San Francisco community service. In

addition to his 26-year career as a California State Parole Officer helping recently released inmates back into a productive life in society, Ken Wong has performed and participated in countless charitable acts and activities for the community. He has shared his gift and talent as a performer to help raise money for Bay area Children's Hospitals (as well as in Canada) in the fight against childhood cancer. Attached to the supporting declaration of Steven F. Gruel are copies of a letter Mona P. P. Louey informing the Court of Ken Wong's participation in charitable fundraising concerts as well as Certificates of Appreciation on behalf of the Red Cross and from California State Treasurer Fiona Ma acknowledging Ken Wong's charitable services. *See Gruel Declaration ¶ 6, Exhibit C.*

Likewise, San Francisco Mayors from Willie Brown, Gavin Newsom and Edwin Lee have recognized Ken Wong's dedication and contributions to San Francisco. *See Gruel Declaration, Exhibit G.* Congresswomen Nancy Pelosi and Jackie Spier with Assemblyman Mark Leno have officially recognized Ken Wong's service to the San Francisco Bay Area. *See Gruel Declaration, Exhibit H.* Likewise, over many years, the San Francsico Board of Supervisors has repeatedly officially Honored Ken Wong for his continued voluntary dedication to the improvement of our community. *See Gruel Declaration, Exhibit I.*

### 3. A Decorated and Distinguished Career as a Parole Officer

Ken Wong has earned numerous awards and received recognition for his work over his career as a California State Parole Officer. *See Gruel Declaration ¶ 8-9, Exhibits E-F.* These awards include a Medal Of Valor, Award of Distinction, The Distinguished Service Award, American Police Hall of Fame, and the John Edgar Hoover Memorial Gold Medal Distinguished Public Service. Also included in Exhibit E are copies of awards for his law enforcement work as

recognized by former San Francisco District Attorney Kamala Harris and by undersigned counsel as an Assistant United States Attorney for Ken Wong's work in large investigations and prosecutions against human trafficking for prostitution.

### 4. Letters of Support From Family & Friends For the Court's Consideration

Friends and family have offered numerous letters in support of Ken Wong. Fiona Ma, as a private citizen, offers her letter of support for Ken Wong. Ken's wife Kerrie, and his 2 sons, along with other community members submit letters for the Court's consideration describing their continued support and love for Ken. *See Gruel Declaration ¶ 7, Exhibits D.*

### B. THE NATURE OF THE OFFENSE / THE NEED TO AVOID DISPARITY

The plea agreement and the PSR correctly summarize Ken Wong's role as a conduit in a bribe to Nuru to get a job for a third party. Ken Wong committed a violation of the public trust and a serious crime. However, when considering the extensive schemes by the many others such as CEOs, a billionaire, developers, and building inspectors in bribing Nuru for permits and official benefits, Ken Wong's crime falls at the very bottom of the Nuru fraud scale.

The Court is uniquely positioned, of course, to know the roles, the crimes and appropriate punishments for those who were part of the Nuru crime ring. It is respectfully submitted that Ken Wong's involvement in the Nuru criminal enterprise was limited, short-lived and not as far-reaching when compared to the many others. The deferred prosecution agreement and a mere $50,000 fine to someone as culpable as billionaire Zhang Li who actively influenced Nuru for favorable use permits for a multi-million dollar project at 555 Fulton is not only mysterious and conveys a "wrong" message to the public, but serves as a sentencing benchmark for which Ken Wong clearly falls well below. Similarly, the sentences for John Porter, Victor Markas, Bernard

Curran and Balmore Hernandez all support a non-prison sentence for Ken Wong to avoid the sentencing disparities among the Nuru related defendants. See Title 18, USC § 3553(a)(6).

### C. PROMOTE RESPECT FOR THE LAW, PROVIDE JUST PUNSHMENT PROTECTION & DETERENCE

There is nothing about Ken Wong's isolated activities in 2019 which suggest he will commit any further crimes or that the community needs protection from him.  As this is a first conviction for a 58-year-old man, nothing suggests that a sentence of incarceration is necessary to promote respect for the law, protection or deterrence.

Moreover, Ken Wong respectfully submits his letter for the Court admitting his crime and seeking leniency. Nothing suggests he will ever break the law again. *See Gruel Declaration ¶ 4, Exhibits A*.

### D. THE ANTICIPATED § 5K1.1 DOWNWARD DEPARTURE MOTION

In accordance with the plea agreement, the government is expected to file its "substantial assistance downward departure motion.  This motion is well-founded and further serves to support a non-prison sentence. Since October 21, 2020, when first approached by the FBI, Ken Wong has cooperated with the FBI.  For three years, he has met with the FBI roughly 70 times on this and other matters.

### IV. CONCLUSION

It is respectfully submitted that the confluence of the facts of this case, the law and the above arguments that a sentence of 3 years of probation with a condition of 3 months of home confinement with electronic monitoring and a fine of $10,000 to be paid over the term of

probation is the appropriate sentence is this case.

Dated: November 24, 2023                    Respectfully Submitted,


                                              ____/s/_____
                                              STEVEN F. GRUEL
                                              Attorney for Defendant Ken Hong Wong